UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MISSION LANDING CONDOMINIUM ASSOCIATION,

        Plaintiff,

- against -

MARIE THERESE DOMINGUEZ, in her official capacity as the
Commissioner of the New York State Department of Transportation,
and KATHY MOSER, in her official capacity as the Acting
Commissioner of the New York State Office of Parks, Recreation
and Historic Preservation,

        Defendants.

**COMPLAINT**

Case No.  5:26-cv-1108 (ECC/ML)

Plaintiff MISSION LANDING CONDOMINIUM ASSOCIATION, by and through its attorneys Couch White, LLP, as and for its Complaint, alleges as follows:

1. This action arises out of the impending and unlawful attempt by Defendants MARIE THERESE DOMINGUEZ, in her official capacity as the Commissioner of the New York State Department of Transportation ("NYSDOT"), and KATHY MOSER, in her official capacity as the Acting Commissioner of the New York State Office of Parks, Recreation and Historic Preservation ("OPRHP") (collectively, "Defendants") to take a portion of Plaintiff's property without the process due under the United States Constitution and in violation of federal law, including state laws and regulations implementing the requirements of federal law.

2. Among other things, Defendants failed to evaluate the impacts from recently-disclosed changes to portions of the I-81 Viaduct Project in Syracuse, New York (the "Project"), affecting the Onondaga Creekwalk (the "Creekwalk"). The Creekwalk (which is owned by the City of Syracuse) is a 4.8 mile mixed use pathway running between Onondaga Lake and Armory Square in downtown Syracuse. The Defendants recently revealed plans to raise the Creekwalk by

10 feet over its current elevation to accommodate the replacement and extension of existing combined sewer overflow ("CSO") pipes and a new stormwater collection and discharge system which will drain directly into Onondaga Creek under the newly-raised Creekwalk. Onondaga Creek is already prone to flooding in this area, and the infrastructure changes proposed for the Project create the risk of increased and/or more frequent flooding in Franklin Square. Defendants were required to evaluate these impacts under applicable laws, including: the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq.*, and the regulations promulgated thereunder, including 44 CFR §§ 60.3 and 60.6; the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 100101, *et seq.*, and the regulations promulgated thereunder at 36 CFR Part 800; and the environmental review requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-47, the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Environmental Conservation Law §§ 8-0101-8-0117, and regulations promulgated thereunder.

3. As explained more fully below, Defendants' administrative review of the Project wholly failed to identify and/or evaluate the environmental and other impacts from the proposed changes to the Creekwalk elevation, nor did it evaluate the effect of the increased discharges of stormwater to Onondaga Creek. Instead, the Defendants dismissed any potential impacts to Plaintiff's property as "de minimis" because "0.002 of 3.04 acres (or 0.07 percent) would be permanently incorporated into the transportation facility to accommodate the relocation of Evans Street and the new shared use path connection between the Creekwalk and Franklin Street." *See* FEIS at 7-14.[1] The foregoing sentence represents the entirety of Defendants' consideration of the Project's impacts upon Plaintiff's property.

---

[1] "FEIS" refers to the Final Design Report / Final Environmental Impact Statement for the I-81 Viaduct Project, available at https://static.parsons.com/I-81-FEIS/04-2022.

4.     Defendants undertook no review of the environmental impacts from the replacement and extension of the CSO pipes, as that work was not part of the Project as it was proposed, nor of the cumulative impact of the CSO project and the Project as a whole.  As such, Defendants plainly failed to undertake the "hard look" at the environmental impacts of the Project that the law requires.

5.     Upon information and belief, Defendants intend to deem the taking of Plaintiff's property to be exempt from the procedural due process requirements of New York's Eminent Domain Procedures Law ("EDPL"), thereby evading judicial review of its violations of Plaintiff's constitutional due process rights, as well as its violations of Federal and State law.

6.     If Defendants are allowed to proceed with the taking of property and the contemplated changes to the Creekwalk, Plaintiff will have no adequate remedy at law to address the adverse impacts to the Property from the change in the flood elevation of Onondaga Creek and the resulting risk of flood damage to the Property.

7.     Plaintiff, therefore, requests that the Defendants be enjoined from proceeding with the temporary and/or permanent taking of its property until such time as they have complied with their obligations under the United States Constitution, and with Federal and State law.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the All Writs Act, 28 U.S.C. §§ 1651.

9.     Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) because the Defendants are located within this judicial district and because the events giving rise to this lawsuit occurred within this judicial district.

**PARTIES**

10.     Plaintiff Mission Landing Condominium Association ("Plaintiff" or the "Association") is an unincorporated association of the unit owners of the Mission Landing condominium, run by a Board of Managers. Plaintiff has standing to raise the causes of action herein pursuant to the Association's By-laws and New York Real Property Law § 339-dd.

11.     Defendant Marie Therese Dominguez is the Commissioner of NYSDOT.

12.     Defendant Kathy Moser is the Acting Commissioner of OPRHP.

**FACTUAL BACKGROUND**

13.     Plaintiff is a New York unincorporated association of condominium unit owners of the Mission Landing condominium ("Mission Landing"), located in the former Remington Monarch Typewriter Company Building, 429 Franklin Street, Syracuse, New York (the "Property").

14.     The Property is located in the Franklin Square area of Syracuse, north and west of the I-81 / I-690 interchange.  Portions of the Property abut the Creekwalk and a pocket park located at the southerly entrance to Franklin Square.



15. The Property is a designated Section 4(f) property under the National Historic Preservation Act, 49 U.S.C. § 303 and 23 U.S.C. § 138. The Property is eligible for listing in the National Register of Historic Places, as a "significant example of early twentieth century industrial/manufacturing architecture." *See* FEIS at 7-6; 23 CFR § 774.11(e)(1).

16. As a Section 4(f) property, the Property is entitled to special protection under the law. Specifically, the Federal Highway Administration ("FHWA") "may not approve the use, as defined in § 774.17, of Section 4(f) property unless a determination is made under paragraph (a) or (b) of this section [23 CFR §774.3]."

17. The determinations required under 23 CFR 774.3(a) or (b) are that:

(a) [FHWA] determines that: (1) There is ***no feasible and prudent avoidance alternative***, as defined in § 774.17, to the use of land from the property; and (2) The action includes ***all possible planning***, as defined in § 774.17, ***to minimize harm to the property*** resulting from such use; or

(b) [FHWA] determines that the use of the property, including any measure(s) to minimize harm (such as any avoidance, minimization, mitigation, or enhancement measures) committed to by the applicant, will have a de minimis impact, as defined in § 774.17, on the property.

*See* 23 C.F.R. § 774.3 (emphasis added).

18. As of November 14, 2017, at its lowest point, the Property was determined to be just above the "base flood" level, as defined in 44 CFR § 59.1, under the conditions existing at that time. Should the base flood level of Onondaga Creek rise by even a modest amount as a result of the changes to the Creekwalk proposed by NYSDOT, the Property would then be in the Special Flood Hazard Area.

19. The concern about flooding at Mission Landing is not hypothetical. Onondaga Creek is prone to flooding in the vicinity of the Property as demonstrated in this photograph (taken on April 3, 2026). The Property sits less than 1 inch above the "100-year floodplain," as that term is defined in 42 U.S.C. § 4004(a)(1).



20.    Although Plaintiff became aware in mid-2025 that NYSDOT was proposing to raise the level of the Creekwalk to accommodate new CSO pipes, it was unaware of NYSDOT's more expansive plans until May 7, 2026, when NYSDOT confirmed in an article published on Syracuse.com that it intended to "run a huge underground [storm]water line that will collect water from the roads rebuilt during the [Project, and that] the Onondaga Creekwalk near Franklin Square will have to be raised up to 10 feet to accommodate the pipe that will empty into the creek." *See* https://www.syracuse.com/news/2026/05/i-81-project-will-tear-up-downtown-syracuse-streets-in-coming-months-what-you-need-to-know.html (visited May 7, 2026).

21.    Because the Creekwalk lies in a FEMA regulatory floodway, Defendants may not undertake "fill, new construction, substantial improvements, and other development within the adopted regulatory floodway ***unless it has been demonstrated through hydrologic and hydraulic analyses performed in accordance with standard engineering practice*** that the proposed

6

encroachment would not result in any increase in flood levels within the community during the occurrence of the base flood discharge[.]" *See* 44 CFR § 60.3(d)(3).

22.     As discussed below, none of the potential impacts to the Property from this significant change to the elevation of the Creekwalk, from the constriction of water flows in the Onondaga Creek channel during flood events to the potential increase in the flow of stormwater from the new stormwater drain pipes and CSO pipes into Onondaga Creek were evaluated by NYSDOT during the environmental review of the Project, and NYSDOT has not publicly disclosed any report containing the analysis required by 44 CFR § 60.3(d)(3).

A.    Environmental Review of the I-81 Viaduct Project

23.     Beginning in approximately 2008, NYSDOT undertook a multi-year study of the I-81 highway corridor through downtown Syracuse, including the I-81 Viaduct and the 1-81 / I-690 interchange.

24.     Following the completion of this study, in August 2013, the Federal Highway Administration ("FHWA") issued a Notice of Intent to prepare an Environmental Impact Statement for the Project.

25.     NYSDOT served as Lead Agency for the environmental review of the Project.

26.     In November 2013, NYSDOT hosted an initial scoping meeting for the Project.

27.     In June 2014, NYSDOT issued a draft scoping report for the Project.

28.     In April 2015, FHWA and NYSDOT issued the Project Scoping Report for the Project.

29.     In April 2019, NYSDOT released a preliminary Draft Design Report/Draft Environmental Impact Statement ("DDR/DEIS") for the Project.

30.      On April 4, 2022, FHWA and NYSDOT released the Final Design Report / Final Environmental Impact Statement ("FDR/FEIS") for the Project.

31.      In its discussion of Transportation Conditions, the FDR/FEIS noted that:

The Onondaga Creekwalk is a shared-use (bicycle and pedestrian) path that, with the exception of the block between Spencer Street and West Kirkpatrick Street, follows the alignment of Onondaga Creek from the Inner Harbor to Wallace Street. Between Wallace Street and Fayette Street, the Creekwalk is diverted away from the creek onto the adjacent city sidewalk system for several blocks. *The lowest sections of the Creekwalk between Genesee Street and Plum Street flood frequently when the Onondaga Creek rises during stormwater events*.

*See* FEIS at 5-57 (emphasis added).

32.      To address this concern, the FEIS noted that:

A new shared-use (bicycle and pedestrian) path would be provided on the west side of Onondaga Creek where none currently exists or would exist under the No Build Alternative. Raising a portion of the existing Onondaga Creekwalk to the *10-year storm elevation* will reduce the frequency of trail closures caused by flooding events in Onondaga Creek.

*See* FEIS at 5-182 (emphasis added).  The FEIS does not identify the "10-year storm elevation" of Onondaga Creek.

33.      Contained within the FEIS's discussion of "Infrastructure" was

A reduction in flow to the combined storm sewer can be accomplished south of Butternut Street within the I-81 Viaduct Study Area by installing a new separated drainage system consisting of large diameter storm sewer trunk lines along former I-81/Almond Street and I-690. The conceptual layout of the proposed drainage system is shown on Figure 5-41 and is presented in more detail in the conceptual drainage plans included in Appendix A-1. *The proposed system would include a new outfall to Onondaga Creek* and would be subject to permit requirements by the NYSDEC and the U.S. Army Corps of Engineers. To obtain the required permits, *a detailed hydraulic analysis would be conducted during final design to demonstrate the project development would have no adverse impacts to the downstream watercourses*.

*See* FEIS at 5-193 (emphasis added).

34.      Despite this proposal, the FEIS expressly admitted that NYSDOT had not yet undertaken any hydraulic study of the possible hydraulic effects of these changes, in conjunction

8

with changes to the bridge replacement work in this same area, noting that "a hydraulic study will not be required until detailed structural design advances." *See* FEIS at 5-201.

B. Impacts to Mission Landing

35. At no point during the approximately 14 years that the Project was under consideration and review did NYSDOT reveal that it intended to raise the Creekwalk by 10 feet directly adjacent to Mission Landing, that it intended to replace and extend the new CSO pipes into the channel of Onondaga Creek, or that it intended to redirect substantial volumes of stormwater directly into the Creek at this location.

36. NYSDOT, not FHWA, prepared the Section 4(f) analysis contained in Chapter 7 of the FDR/FEIS. *See* FEIS at 7-2.

37. NYSDOT's discussion of the impacts to Mission Landing in the FDR/FEIS were cursory and contained no discussion of any of these potential impacts upon the Property:

> **Remington Monarch Typewriter Company Building at 429 Franklin Street North (Map ID # 31) both individually listed and contributing to the Franklin Square Historic District**, where 0.002 of 3.04 acres (or 0.07 percent) would be permanently incorporated into the transportation facility to accommodate the relocation of Evans Street and the new shared use path connection between the Creekwalk and Franklin Street (see Figure 7-26).

*See* FEIS at 7-14. There is no discussion of any potential flooding impacts to Mission Landing in the FEIS.

38. Based upon this mischaracterization of the impacts to the Property, NYSDOT sought and obtained the concurrence of OPRHP's Division for Historic Preservation that the proposed taking would result in the "*de minimis*" use of the Property. *See* FEIS at 7-13. As a result of this erroneous determination, NYSDOT evaded its obligation to seek a "***feasible and prudent avoidance alternative***," to the taking of the Property and to undertake "***all possible***

9

*planning …to minimize harm to the property* resulting from" the taking.  See 23 CFR § 774.3 (emphasis added).

39.    In addition to the mischaracterization of the potential impacts to the Property, NYSDOT's  description of the proposed taking was based upon a substantial undercalculation of the amount of Property to be taken for the Project.

40.    While NYSDOT stated that only 92 square feet of land would be taken from the Property, it actually intends to permanently take 2,500 square feet and to temporarily take an additional 2,500 square feet for construction and deconstruction access.

41.    NYSDOT also failed to disclose its plans to eliminate nearly all of the mature trees screening Mission Landing from the I-690 highway to OPRHP's Division for Historic Preservation.

42.    In the fall of 2025, residents of Mission Landing learned that NYSDOT intended to raise the elevation of the Creekwalk by approximately 7 to 10 feet.

43.    The information provided to the residents suggested that the elevation change was intended to accommodate the replacement of two existing combined sewer overflow ("CSO") pipes and the extension of the CSO pipes further into the channel of Onondaga Creek.

44.    The replacement and extension of the CSO pipes was not part of the Project as proposed, and Defendants did not review the potential environmental impacts from this proposed work as part of the Project.  Given the changes already proposed for the Project at this location, the extension of the CSO pipes into the channel of the Creek has the potential for significant environmental impacts.

45.    The residents requested a copy of any flood analysis prepared by NYSDOT to verify that the proposed changes would not affect the Property as required by 44 CFR § 60.3(d)(3).

10

46.     To date, NYSDOT has not provided a copy of any such study.

47.     Instead, Mission Landing obtained a copy of a flood study commissioned by another property owner in Franklin Square (the "Flood Study"), using the U.S. Army Corps of Engineers' Hydrologic Engineering Center's River Analysis System ("HEC-RAS") modeling and plans provided by NYSDOT.

48.     The Flood Study showed that "the proposed development does increase both the 100-year [Flood Water] Elevation and the 100-year [Energy Grade Line] Elevation at several locations along Onondaga Creek, including "the section closest to the Mission Landing property." As a result, the Property and other properties within Franklin Square are placed at risk, or at increased risk, of damage from flooding the planned alterations to the Onondaga Creek channel.

49.     Residents of Mission Landing contacted numerous state and local government officials, including NYSDOT.  After initially stating that, when a design-build contractor was selected for the work, the contractor would be responsible for preparing a flood study based on the final drawings, NYSDOT later stated that it was awaiting the results of its own flood study.

50.     Upon information and belief, Defendants' proposed alterations to the Onondaga Creekwalk violate the criteria contained in 44 CFR § 60.3, and Defendants are prohibited from obtaining a variance from those criteria under 44 CFR § 60.6(a)(1), which provides that "Variances shall not be issued by a community within any designated regulatory floodway if any increase in flood levels during the base flood discharge would result[.]"

51.     Despite multiple requests by Plaintiff and its residents, NYSDOT has never provided a report containing the findings required by 44 CFR § 60.3(d)(3) to Mission Landing.

11

C.    The Proposed Taking of the Plaintiff's Property

52.    On or about December 4, 2025, Mission Landing's management company received a letter from NYSDOT advising that it was "preparing to acquire the additional right of way needed for the 1-81 VIADUCT PROJECT [*sic*] project."  The letter enclosed an unofficial copy of NYSDOT's acquisition map for the Project.

53.    In response, by letter dated December 17, 2025, counsel for Mission Landing advised NYSDOT that "scope of the planned taking in no way resembles what was proposed by [NYSDOT] during its environmental review of the Project, and there are numerous other substantive and procedural defects with regard to the proposed taking and the Project as it relates to the Property[.]" Those defects included the mischaracterization of the taking as "*de minimis*" for historic preservation review, and the failure to evaluate potential flooding impacts, the misidentification of the property to be taken.

54.    NYSDOT did not formally respond to Mission Landing's letter.

55.    As noted above, on May 7, 2026, NYSDOT publicly confirmed its intention to raise the Creekwalk and to install a new stormwater drainage pipe directly upstream of Mission Landing.

56.    One week later,  by email dated May 14, 2026, NYSDOT advised Mission Landing that "we were just informed by our legal department that we are able to continue with the acquisition process at this time."

57.    The State's statutory authority to acquire property it deems necessary to construct, reconstruct or improve a state highway or property connected with such highway projects is set forth in New York Highway Law § 30.  Such property "may be acquired by the state as provided in the eminent domain procedure law".  *See* Highway Law § 30(2).

58.     Before condemning property, NYSDOT must prepare an accurate acquisition map of property deemed necessary for the highway project.  *See* Highway Law §30(3).  Once the acquisition map is approved by the Commissioner of Transportation, the State may proceed with the acquisition pursuant to the EDPL.  *See* EDPL § 402(A).

59.     Article 2 of the EDPL contains the procedural due process protections applicable to takings by the State of New York.

60.     Those protections include: notice provisions (EDPL § 202); a public hearing (EDPL § 203); and written findings requirements (EDPL § 204).

61.     EDPL § 205 provides that a proposed public project may be amended "only in the event that further study of field conditions warrant" such changes.

62.     EDPL § 206 contains a provision that exempts a condemnor from complying with the procedural due process protections afforded property owners by Article 2, if "pursuant to other state, federal or local law or regulation, it considers and submits factors similar to those enumerated in subdivision (B) of section two hundred four, to a state, federal or local governmental agency, board or commission before proceeding with the acquisition and obtains a license, a permit, a certificate of public convenience or necessity or other similar approval from such agency, board or commission …".  *See* EDPL § 206.

63.     Based upon the materials provided to Mission Landing by NYSDOT, NYSDOT intends to claim that it is exempt from compliance with Article 2 of the EDPL pursuant to the terms of EDPL § 206(A), and that it may acquire title to the Property by the mere filing of an acquisition map in the office of the Clerk of Onondaga County Clerk.

64.     The proposed changes to the Creekwalk are not justified under EDPL § 205.

65.     The taking of additional property from Plaintiff is not justified under EDPL § 205.

66.     The taking of the Property does not meet the exemption criteria contained in EDPL § 206, as the nature and extent of the changes to the Creekwalk were neither disclosed nor evaluated in the environmental review of the Project, and NYSDOT did not take the required "hard look" at the potential flooding impacts from the changes to the Creekwalk.

67.     Notwithstanding the foregoing, NYSDOT intends to proceed with the unlawful and procedurally defective taking of Plaintiff's property.

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

68.     Plaintiff repeats each of the foregoing allegations.

69.     The Fourteenth Amendment to the United States Constitution prohibits the State of New York from depriving the Plaintiff and its members of property without Due Process of Law.

70.     Defendants failed to disclose the true nature and extent of the planned changes to the Creekwalk, and the resulting impacts to the Property.

71.     As a result of this failure, Plaintiff was denied notice and an opportunity to be heard on the Defendants' proposed taking of a portion of the Property, and to contest the flawed determination that the Project would have no more than a *de minimis* impact on the Property as a whole.

72.     Plaintiff was further denied due process insofar as NYSDOT exempted its actions from the notice, hearing and determination and findings requirements of Article 2 of the EDPL, thereby attempting to insulate its exercise of the power of eminent domain from judicial review.

73.     Plaintiff was further denied due process insofar as NYSDOT exempted its actions from the notice, hearing and determination and findings requirements of Article 2 of the EDPL, thereby attempting to insulate its violations of Federal and State law from judicial review.

14

74.     Defendants were and are acting under color of New York State Law in acting to deprive Plaintiff and its members of property without Due Process of Law by causing the State of New York to attempt to take title to the Property without providing Plaintiff with notice and an opportunity to be heard on the actual nature and extent of proposed taking of property.

75.     Plaintiff have been, and will further be, irreparably damaged if the Defendants are permitted to proceed with the unlawful taking of property without due process of law. Accordingly, Plaintiff requests that the Court grant it declaratory and injunctive relief restraining Defendants' violation of Plaintiff's constitutional rights.

76.     Pursuant to 42 U.S.C. § 1988, Plaintiff also requests its reasonable attorney's fees incurred in enforcing 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
(Declaratory Judgment and Injunctive Relief)

77.     Plaintiff repeats each of the foregoing allegations.

78.     28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

79.     An actual controversy exists between Plaintiff and Defendants with regard to the constitutionality of the process employed by Defendants with regard to the taking of property from the Plaintiff.

80.     The provisions of New York State Eminent Domain Procedure Law §402(A) violate rights to Due Process guaranteed by the United States Constitution prior to a taking of private property through the power of eminent domain because EDPL §402(A) allows the State to take property without an adversarial proceeding as to whether the taking is timely and correct.

15

81.  New York State Eminent Domain Procedure Law §402(A) violates rights to Due Process guaranteed by the United States Constitution prior to a taking of private property through the power of eminent domain because EDPL §402(A) allows the State to take property without judicial review of the propriety of the taking.

82.  Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendants' conduct is unlawful.

83.  As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants' attempted taking of Plaintiff's property as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

**THIRD CAUSE OF ACTION**
(Declaratory Judgment – National Flood Insurance Act)

84.  Plaintiff repeats each of the foregoing allegations.

85.  28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

86.  An actual controversy exists between Plaintiff and Defendants with regard to the planned changes to the elevation of the Creekwalk, and the related changes to the hydrology of Onondaga Creek directly adjacent to the Property.

87.  Defendants' plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway violates the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq.*, and the regulations promulgated thereunder, including 44 CFR §§ 60.3 and 60.6.

88.     Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendant has violated the NFIA.

89.     As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with the NFIA and the regulations promulgated thereunder as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

**FOURTH CAUSE OF ACTION**
(Declaratory Judgment – National Historic Preservation Act)

90.     Plaintiff repeats each of the foregoing allegations.

91.     28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

92.     Defendants' determination that the Project will result in a *de minimis* use of the Property based upon erroneous and/or misleading information violates the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 100101, *et seq.*, and the regulations promulgated thereunder at 36 CFR Part 800.

93.     Defendants' failure to seek a "feasible and prudent avoidance alternative," to the taking of the Property and to undertake "all possible planning …to minimize harm to the property resulting from" the taking of Plaintiff's property violates 23 CFR § 774.3.

94.     Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendants' Section 4(f) determination violated the NHPA.

95.     As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with the NHPA and the regulations promulgated thereunder as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

## FIFTH CAUSE OF ACTION
(Declaratory Judgment – Environmental Review)

96.     Plaintiff repeats each of the foregoing allegations.

97.     28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

98.     Defendants' failure to identify and to take a "hard look" at potential impacts from raising the Creekwalk elevation, the construction of infrastructure within the regulatory floodway and related changes to the hydrology of Onondaga Creek violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-47, the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Environmental Conservation Law §§ 8-0101-8-0117, and regulations promulgated thereunder.

99.     Defendants' failure to evaluate the environmental impacts of the replacement and extension of the CSO pipes, including the cumulative impacts of this activity with the work proposed for the Project, is a violation of its obligations under NEPA and SEQRA.

100.    Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendants environmental review of the Project violated NEPA and SEQRA.

101.    As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with NEPA and SEQRA as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court issue an Order:

1.     On Plaintiff's First Cause of Action, granting Plaintiff declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, and restraining Defendants from taking Plaintiff's property in violation of Plaintiff's constitutional right to due process of law;

2.     On Plaintiff's Second Cause of Action, declaring that New York State Eminent Domain Procedure Law §402(A) violates rights to Due Process guaranteed by the United States Constitution prior to a taking of private property through the power of eminent domain, and enjoining Defendants from taking Plaintiff's property;

3.     On Plaintiff's Third Cause of Action, declaring that Defendants' plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway violates the NFIA, and enjoining Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and

19

roadway infrastructure within a regulatory floodway proceeding unless and until they comply with the NFIA;

4.      On Plaintiff's Fourth Cause of Action, declaring that Defendants' Section 4(f) determination violates the NHPA, and enjoining Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with the NHPA

5.      On Plaintiff's Fifth Cause of Action, declaring that Defendants environmental review of the Project violated NEPA, SEQRA, and regulations promulgated thereunder, and enjoining Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with NEPA and SEQRA.

6.      Awarding Plaintiff its reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

7.      Awarding Plaintiff its reasonable fees, costs, and expenses; and

8.      Awarding such other and further relief as justice may require.

Dated:      Albany, New York
            May 21, 2026                      COUCH WHITE, LLP


                                              _s/John D. Hoggan, Jr._____
                                              John D. Hoggan, Jr., Esq. (BRN 511254)
                                              *Attorneys for Plaintiff*
                                              540 Broadway
                                              P.O. Box 22222
                                              Albany, New York 12201-2222
                                              (518) 426-4600