**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MISSION LANDING CONDOMINIUM ASSOCIATION,

Plaintiff,

v.

MARIE THERESE DOMINGUEZ, in her official capacity as the Commissioner of the New York State Department of Transportation, and KATHY MOSER, in her official capacity as the Acting Commissioner of the New York State Office of Parks, Recreation and Historic Preservation,

Defendants.

5:26-CV-01108 (GWC)

**STATE DEFENDANTS' MEMORANDUM OF LAW SUPPORTING DISMISSAL PURSUANT TO RULE 12(b)(1)**

LETITIA JAMES
Attorney General of the State of New York
Attorney for State Defendants

Dated: July 20, 2026
Syracuse, New York

Patrick Russell Blood, Esq.
Assistant Attorney General
300 South State Street, Suite 300
Syracuse, New York 13202
Telephone: 315-448-4890
Fax: 315-448-4853

## PRELIMINARY STATEMENT

Defendants MARIE THERESE DOMINGUEZ, in her official capacity as the Commissioner of the New York State Department of Transportation ("DOT"), and KATHY MOSER, in her official capacity as the Acting Commissioner of the New York State Office of Parks, Recreation and Historic Preservation, (collectively "State Defendants"), respectfully move to dismiss Plaintiff MISSION LANDING CONDOMINIUM ASSOCIATION's ("Plaintiff") complaint (Dkt. No. 1) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction. More specifically, the controversy complained of is not ripe for adjudication because State Defendants have not yet completed or published the determination and findings of the proposed acquisition of Plaintiff's property in accordance with Article 2 of the New York State Eminent Domain Procedure Law. Accordingly, State Defendants respectfully seek dismissal on ripeness grounds.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff "is an unincorporated association of the unit owners of the Mission Landing condominium" located at 429 Franklin Street, Syracuse, New York ("the Property"). *See* Dkt. No. 1 at ¶¶ 10, 13-14. Plaintiff commenced this action May 21, 2026, alleging that "Defendants failed to evaluate the impacts from recently-disclosed changes to portions of the I-81 Viaduct Project . . . (the 'Project'), affecting the Onondaga Creekwalk (the 'Creekwalk')." *Id.* ¶ 2. More specifically, Plaintiff alleges, *inter alia*, that Defendants "recently revealed plans to raise the Creekwalk by 10 feet over its current elevation" in connection with expanding combined sewer overflow pipes and stormwater drainage systems. *Id.* Plaintiff alleges, *inter alia*, that the "infrastructure changes proposed for the Project create the risk of increased and/or more frequent flooding in Franklin Square." *Id.*

Plaintiff asserts that "[u]pon information and belief, Defendants intend to deem the taking of Plaintiff's property to be exempt from the procedural due process requirements of New York's Eminent Domain Procedures Law ("EDPL")[.]" Dkt. No. 1 ¶ 5. In the First Cause of Action, Plaintiff asserts a procedural due process claim under 42 U.S.C. § 1983, alleging denial of "notice and opportunity to be heard on the Defendants' proposed taking of a portion of the Property, and to contest the flawed determination that the Project would have no more than a *de minimis* impact on the Property as a whole." *Id.* ¶ 71. Plaintiff further asserts that State Defendants "exempted its actions from the notice, hearing and determination and findings requirements of Article 2 of the EDPL[.]" *Id.* ¶¶ 72-73. Plaintiff's Second Cause of Action, which appears to be a request for declaratory and injunctive relief that is tied to the First Cause of Action, asserts that "[a]n actual controversy exists between Plaintiff and Defendants with regard to the constitutionality of the process employed by Defendants with regard to the taking of property from the Plaintiff."[1] *Id.* ¶ 79. Plaintiff contends that "[t]he provisions of [EDPL] § 402(A) violate rights to Due Process guaranteed by the United States Constitution prior to a

[1] It should be noted that Plaintiff's remaining causes of action appear to be requests for declaratory relief relative to various federal statutes as opposed to separate causes of action. *See* Dkt. No. 1 ¶¶ 84-101. In the event a justiciable controversy existed, State Defendants would argue that there is no private right of action as to each federal statute asserted and that they are not properly before the Court. *See W. Mohegan Tribe & Nation of N.Y. v. New York*, 246 F.3d 230, 232 (2d Cir. 2001) ("[T]he law makes it clear that the violations of the NHPA can only be committed by a federal agency.") (citations omitted); *Karst Envtl. Educ. & Prot., Inc. v. Envtl. Prot. Agency*, 475 F.3d 1291, 1295 (D.C. Cir. 2007) ("[B]ecause NEPA creates no private right of action, challenges to agency compliance with the statute must be brought pursuant to the Administrative Procedure Act . . . [A]nd because NHPA, like NEPA, contains no private right of action, we agree with the Ninth Circuit that NHPA actions must also be brought pursuant to the APA.") (citations omitted); *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 252-53 (5th Cir. 2008) (stating that the Fifth Circuit "has previously found that Congress did not intend to create a private right of action for violations of the NFIA.") (citation omitted).

taking of private property . . . [by] allow[ing] the State to take property without an adversarial proceeding as to whether the taking is timely and correct." *Id.* ¶ 80.

Furthermore, Plaintiff alleges that State Defendants intend to claim that the Property "is exempt from compliance with Article 2 of the EDPL pursuant to the terms of EDPL § 206(A), and that it may acquire title to the Property by the mere filing of an acquisition map in the office of the Clerk of Onondaga County[.]" Dkt. No. 1 ¶ 63. Plaintiff alleges that "[t]he proposed changes to the Creekwalk are not justified under EDPL § 205" and that "[t]he taking of additional property from plaintiff is not justified under EDPL § 205." *Id.* ¶ 65.

State Defendants assert that there is no justiciable controversy as the purported taking has not been finalized. By way of brief background, on or about May 14, 2026, a DOT representative contacted Plaintiff's counsel to begin the inspection process in anticipation of acquiring a portion of the Property. *See Declaration of Meghan Imkeller sworn to July 16, 2026*, ¶ 4 ("*Imkeller Dec.* ¶ __"). Around this time counsel for DOT had been in communication with Plaintiff's counsel, beginning around late 2025, as to a planned acquisition of the Property. *Id.* The process remained on hold during that time. *Id.*

On Friday, May 15, 2026, DOT scheduled an appointment for June 2, 2026, to discuss the property acquisition. *See Imkeller Dec.* ¶ 5. Plaintiff filed this lawsuit following the scheduling of this appointment and subsequently, the appointment was cancelled. *See id.* Nonetheless, as the acquisition process remained pending, the Property was inspected on June 2, 2026. *See id.* A Report of Physical Inspection was subsequently completed and submitted. *See id.*

As of the time of this motion, there remain several steps that must be taken before the acquisition process can be completed. *Imkeller Dec.* ¶ 6. For instance, a property appraisal will need to be completed. *See id.* Also, the New York State Attorney General's Office will need to

certify the title, which may include confirming the owner and/or determining if any other party has a claim to the title. *See id.* Once the appraisal and title certification are completed, an offer package may be sent out to the property owners, which includes a monetary valuation from the appraiser to be paid as compensation for the acquisition. *See id.* Thereafter, a DOT representative may contact Plaintiff after the offer package is sent to confirm receipt and to confirm whether there have been any changes that may affect the title of the property. *See id.* There will be an additional final property inspection. *See id.* Finally, a Notice of Appropriation and a map reflecting the acquisition will need to be filed with the county clerk's office to effectively finalize or "vest" the acquisition. *Id.* The estimated time for completion depends on receipt of the completed Title Certification and Appraisal Report. *See id.* ¶ 7. While there are multiple factors that could ultimately affect completion, in this case the offer package could potentially be sent out in late 2026. *See id.*

Following the offer, Plaintiff can choose to sign the agreement and closing papers or reject the offer amount. *See Imkeller Dec.* ¶ 8. If unsatisfied, Plaintiff may then pursue court action to contest the amount or alternatively, Plaintiff can take no action and the payment will remain available in perpetuity. *See id.*

## ARGUMENT

### I. RULE 12(B)(1) STANDARD

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Natl. Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (cleaned up). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

*Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000) (citation omitted). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Financial Services Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (citation omitted). Moreover, in resolving a motion pursuant to Rule 12(b)(1), the court may consider evidence outside of the pleadings. *See Makarova*, 201 F.3d at 113.

## II. THE CONTROVERSY IS NOT RIPE

"To be justiciable, a cause of action must be ripe—it must present 'a real, substantial controversy, not a mere hypothetical question.'" *AMSAT Cable Ltd. v. Cablevision of Conn.*, 6 F.3d 867, 872 (2d Cir. 1993). "Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148-49 (1967)). Ripeness "is peculiarly a question of timing." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 580 (1985). "A claim is not ripe if it depends upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *AMSAT Cable Ltd.*, 6 F.3d at 872 (quoting *Union Carbide*, 473 U.S. at 580-81).

"'Ripeness' is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction." *Simmonds v. I.N.S.*, 326 F.3d 351, 356-57 (2d Cir. 2003) (citing *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n. 18 (1993)). The first is "the Case or Controversy Clause of Article III of the Constitution" and the second is the "more flexible doctrine of judicial prudence[.]" *Id.* at 357. "Both are concerned with whether a case

has been brought prematurely, but they protect against prematureness in different ways and for different reasons." *Id*.

As to Constitutional ripeness, "[i]t prevents courts from declaring the meaning of the law in a vacuum and from constructing generalized legal rules unless the resolution of an actual dispute requires it." *Simmonds*, 326 F.3d at 357. On the other hand, "when a court declares that a case is not prudentially ripe, it means that the case will be *better* decided later and that the parties will not have constitutional rights undermined by the delay. It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III." *Id.* (emphasis in original). In any event, "[u]sually it does not matter to the parties whether a case is dismissed for lack of constitutional or prudential ripeness." *Id.*

The Supreme Court's framework for analyzing prudential ripeness includes asking: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Simmonds*, 326 F.3d at 359 (*Abbott Labs v. Gardner*, 387 U.S. 136, 148-49 (1967)). As to the first question, "the 'fitness' analysis 'is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur.'" *Id.* (quoting *Isaacs v. Bowen*, 865 F.2d 468, 478 (2d Cir. 1989)). Regarding the second question—hardship—the court examines "whether the challenged action creates a direct and immediate dilemma for the parties." *Marchi v. Board of Cooperative Educational Services of Albany*, 173 F.3d 469, 478 (2d Cir. 1999) (citing *Abbott*, 387 U.S. at 152-53).

Herein, the heart of Plaintiff's complaint concerns the process set forth under Article 2 of the EDPL. Section 207 provides a avenue toward judicial review for persons aggrieved by the State's decision to acquire property. More specifically, the statute provides that "[The person or

persons affected] may seek judicial review thereof by the appellate division of the supreme court, in the judicial department embracing the county wherein the proposed facility is located by the filing of a petition in such court within third days after the condemnor's completion of its publication of its determination and findings pursuant to section two hundred four herein." N.Y. E.D.P.L. § 207; *see also Brody v. Village of Port Chester*, 434 F.3d 121, 132-134 (2d Cir. 2005) (discussing the procedures set forth under § 207 in the context of a due process challenge.). Given that State Defendants have not completed the determination and findings necessary to trigger the mechanism for judicial review, the controversy at-hand does not present a justiciable controversy. Accordingly, it is respectfully submitted that the Court dismiss the complaint on ripeness grounds.

**CONCLUSION**

Based on the above-stated reasons and authorities, it is respectfully requested that the Court grant State Defendants' motion and dismiss Plaintiff's claims against State Defendants on ripeness grounds.

LETITIA JAMES
Attorney General of the State of New York
Attorney for State Defendants

Dated: July 20, 2026
Syracuse, New York

/s
Patrick R. Blood, Esq.
Assistant Attorneys General
300 South State Street, Suite 300
Syracuse, New York 13202