UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

MISSION LANDING CONDOMINIUM ASSOCIATION,

Plaintiff,

- against -

MARIE THERESE DOMINGUEZ, in her official capacity as the Commissioner of the New York State Department of Transportation, and KATHY MOSER, in her official capacity as the Acting Commissioner of the New York State Office of Parks, Recreation and Historic Preservation, FEDERAL HIGHWAY ADMINISTRATION and RICHARD J. MARQUIS, in his official capacity as Federal Highway Administration New York Division Administrator,

Defendants.

**AMENDED COMPLAINT**

Case No. 5:26-cv-01108-GWC

Plaintiff MISSION LANDING CONDOMINIUM ASSOCIATION, by and through its attorneys Couch White, LLP, as and for its Complaint, alleges as follows:

1. This action arises out of the impending and unlawful attempt by Defendants MARIE THERESE DOMINGUEZ, in her official capacity as the Commissioner of the New York State Department of Transportation ("NYSDOT"), and KATHY MOSER, in her official capacity as the Acting Commissioner of the New York State Office of Parks, Recreation and Historic Preservation ("OPRHP") (collectively, the "State Defendants") to take a portion of Plaintiff's property without the process due under the United States Constitution and in violation of federal law, including state laws and regulations implementing the requirements of federal law.

2. The foregoing actions by the State Defendants follow and arise out of the environmental review of the I-81 Viaduct Project in Syracuse, New York (the "Project"), which was conducted under the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-47, the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Environmental

Conservation Law §§ 8-0101-8-0117, and regulations promulgated thereunder. NYSDOT served as lead agency for the environmental review of the Project. As described below, NYSDOT misrepresented the nature and scope of the planned impacts to Plaintiff's property, such that those impacts were never disclosed and evaluated under the applicable "hard look" standard. The Federal Highway Administration ("FHWA") did not conduct any separate or additional analysis of these impacts under its authority under Federal law.[1]

3. Among other things, Defendants failed to evaluate the impacts from recently-disclosed changes to portions of the Project affecting the Onondaga Creekwalk (the "Creekwalk"). The Creekwalk (which is owned by the City of Syracuse) is a 4.8 mile shared use pathway running between Onondaga Lake and Armory Square in downtown Syracuse. The Defendants recently revealed plans to raise the Creekwalk by 10 feet over its current elevation to accommodate the replacement and extension of existing combined sewer overflow ("CSO") pipes and a new stormwater collection and discharge system which will drain directly into Onondaga Creek under the newly-raised Creekwalk. Onondaga Creek is already prone to flooding in this area, and the infrastructure changes proposed for the Project create the risk of increased and/or more frequent flooding in Franklin Square. Defendants were required to evaluate these impacts under applicable laws, including: the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq.*, and the regulations promulgated thereunder, including 44 CFR §§ 60.3 and 60.6; the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 100101, *et seq.*, and the regulations promulgated thereunder at 36 CFR Part 800; NEPA and SEQRA, and regulations promulgated thereunder.

4. In addition, NYSDOT failed to correctly identify the amount of property that it intended to take from Mission Landing for the Project, or to inform the involved agencies of its

[1] FHWA and the State Defendants are collectively referred to as the "Defendants".

plan to remove nearly all of the mature trees shielding Mission Landing from the elevated I-690 highway which runs adjacent to the property. Instead, NYSDOT grossly understated both the nature and extent of its intended taking of Plaintiff's property.

5. Mission Landing, and eighteen other properties located in Franklin Square, are either listed or eligible for listing on the National Register of Historic Places. Franklin Square contains one of the most historically significant concentrations of early 20th Century industrial buildings in the country, many of which are substantial, multi-story former factories ranging between 40,000 square feet and 175,000 square feet that have been rehabilitated for commercial and residential uses. This status imposes special protections under the law, including specific review criteria and mitigation requirements for the actions proposed by NYSDOT in Franklin Square. Because NYSDOT misrepresented the nature of its planned activities, Mission Landing (and its neighbors) were denied the protections to which they were entitled by law.

6. As explained more fully below, Defendants' administrative review of the Project wholly failed to identify and/or evaluate the environmental and other impacts from the proposed changes to the Creekwalk elevation, nor did it evaluate the effect of the increased discharges of stormwater to Onondaga Creek. Instead, the Defendants dismissed any potential impacts to Plaintiff's property as "de minimis" because "0.002 of 3.04 acres (or 0.07 percent) would be permanently incorporated into the transportation facility to accommodate the relocation of Evans Street and the new shared use path connection between the Creekwalk and Franklin Street." *See* FEIS at 7-14.[2] The foregoing sentence represents the entirety of Defendants' consideration of the Project's impacts upon Plaintiff's property and there is absolutely no consideration of the potential impacts upon the numerous other historic properties in Franklin Square.

---

[2] "FEIS" refers to the Final Design Report / Final Environmental Impact Statement for the I-81 Viaduct Project, available at https://static.parsons.com/I-81-FEIS/04-2022.

7. Defendants undertook no review of the environmental impacts from the replacement, location and extension of the CSO pipes, nor did they consider the negative impact of a new floatable containment structure that would be placed in the middle of the small gateway park entrance to Franklin Square above the replacement CSO pipes, as that work was not part of the Project as it was proposed, nor of the cumulative impact of the CSO project and the Project as a whole. Similarly, Defendants gave no consideration to proposed changes to the Creekwalk or its interconnection to a planned regional shared-use path network. Defendants also failed to consider ways to mitigate or reduce existing impacts to multiple historic properties in Franklin Square that were already within the existing flood plain elevations. As such, Defendants plainly failed to undertake the "hard look" at the environmental impacts of the Project that the law requires.

8. The actions that are at issue in this matter are largely incidental to the Project. This is relevant for at least two reasons. First, because the changes to the Creekwalk, the CSOs, and the shared-use path are (at best) tangential to the Project, virtually no consideration was given to their potential impacts or to potential measures to mitigate those impacts. Second, because these changes are incidental to the larger Project, NYSDOT may be enjoined from taking action to irreversibly implement these changes while this matter is pending without requiring the suspension of work on the Project. As such, NYSDOT should be enjoined from taking action to irreversibly implement any changes to the Creekwalk or to Plaintiff's property while this action is pending.

9. Furthermore, Plaintiff understands that NYSDOT intends to deem the taking of Plaintiff's property to be exempt from the procedural due process requirements of New York's Eminent Domain Procedures Law ("EDPL"), thereby evading judicial review of its violations of Plaintiff's constitutional due process rights, as well as its violations of Federal and State law. If NYSDOT is allowed to proceed with the taking of property and the contemplated changes to the

Creekwalk, Plaintiff will have no adequate remedy at law to prevent or mitigate the adverse impacts to its own property and to neighboring properties in historic Franklin Square. As the taking of Plaintiff's property under these circumstances constitutes an irreparable injury, NYSDOT should be enjoined from taking Plaintiff's property during the pendency of this action.

10. Plaintiff, therefore, requests that the Defendants be enjoined from proceeding with the temporary and/or permanent taking of its property, or any physical alterations impacting Plaintiff's property until such time as they have complied with their obligations under the United States Constitution, and with Federal and State law.

**JURISDICTION AND VENUE**

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, NEPA, the Administrative Procedures Act ("APA"), and the All Writs Act, 28 U.S.C. §§ 1651.

12. Venue is proper in the Northern District of New York pursuant to 28 U.S.C. § 1391(b) because the Defendants are located within this judicial district and because the events giving rise to this lawsuit occurred within this judicial district.

**PARTIES**

13. Plaintiff Mission Landing Condominium Association ("Plaintiff" or the "Association") is an unincorporated association of the unit owners of the Mission Landing condominium, run by a Board of Managers. Plaintiff has standing to raise the causes of action herein pursuant to the Association's By-laws and New York Real Property Law § 339-dd.

14. Defendant Marie Therese Dominguez is the Commissioner of NYSDOT.

15. Defendant Kathy Moser is the Acting Commissioner of OPRHP.

16. Defendant FHWA is an executive agency of the federal government with offices located at 1200 New Jersey Avenue SE, Washington, DC 20590.

17. Defendant Richard J. Marquis signed the Joint Record of Decision / Findings Statement ("ROD") on behalf of FHWA.

**FACTUAL BACKGROUND**

18. Plaintiff is the association of condominium unit owners of the Mission Landing condominium ("Mission Landing"), located in the former Remington Monarch Typewriter Company Building, 429 Franklin Street, Syracuse, New York (the "Property").

19. The Property is located in the Franklin Square area of Syracuse, northwest of the I-81 and I-690 interchange. Portions of the Property abut the Creekwalk and gateway park located at the southerly (primary) entrance to Franklin Square.

20. Franklin Square contains a significant number of renovated properties that are either listed or eligible for listing on the National Register of Historic Places. Many of these historic properties also abut Onondaga Creek, as the following graphic shows:



21. The Mission Landing Property is a designated Section 4(f) property under the National Historic Preservation Act, 49 U.S.C. § 303 and 23 U.S.C. § 138. The Property is eligible for listing in the National Register of Historic Places, as a "significant example of early twentieth century industrial/manufacturing architecture." See FEIS at 7-6; 23 CFR § 774.11(e)(1).

22. As a Section 4(f) property, the Property is entitled to special protection under the law. Specifically, the Federal Highway Administration ("FHWA") "may not approve the use, as defined in § 774.17, of Section 4(f) property unless a determination is made under paragraph (a) or (b) of this section [23 CFR §774.3]."

23. The determinations required under 23 CFR 774.3(a) or (b) are that:

> (a) [FHWA] determines that: (1) There is ***no feasible and prudent avoidance alternative***, as defined in § 774.17, to the use of land from the property; and
> (2) The action includes ***all possible planning***, as defined in § 774.17, ***to minimize harm to the property*** resulting from such use; or
> (b) [FHWA] determines that the use of the property, including any measure(s) to minimize harm (such as any avoidance, minimization, mitigation, or enhancement measures) committed to by the applicant, will have a de minimis impact, as defined in § 774.17, on the property.

*See* 23 C.F.R. § 774.3 (emphasis added).

24. As of November 14, 2017, at its lowest point, the Property was determined to be just above the "base flood" level, as defined in 44 CFR § 59.1, under the conditions existing at that time. Should the base flood level of Onondaga Creek rise even slightly as a result of NYSDOT's changes to the Creekwalk, the Property would then be in the Special Flood Hazard Area.

25. The concern about flooding in Franklin Square is not hypothetical. Onondaga Creek is prone to flooding in the vicinity of the Property as demonstrated in the following photographs. The Property sits less than 1 inch above the "100-year floodplain," as that term is defined in 42 U.S.C. § 4004(a)(1). Other historical properties in Franklin Square are at (or even below) the floodplain elevation.



(taken on October 26, 2021).





(taken October 21, 2021).



(taken on April 3, 2026).

26. Although Plaintiff became aware in mid-2025 that NYSDOT was proposing to raise the level of the Creekwalk to accommodate new CSO pipes, it was unaware of NYSDOT's more expansive plans until May 7, 2026, when NYSDOT confirmed in an article published on Syracuse.com that it intended to "run a huge underground [storm]water line that will collect water from the roads rebuilt during the [Project, and that] the Onondaga Creekwalk near Franklin Square will have to be raised up to 10 feet to accommodate the pipe that will empty into the creek." *See* https://www.syracuse.com/news/2026/05/i-81-project-will-tear-up-downtown-syracuse-streets-in-coming-months-what-you-need-to-know.html (visited May 7, 2026).

27. Because the Creekwalk lies in a FEMA regulatory floodway, Defendants may not undertake "fill, new construction, substantial improvements, and other development within the adopted regulatory floodway ***unless it has been demonstrated through hydrologic and hydraulic analyses performed in accordance with standard engineering practice*** that the proposed

encroachment would not result in any increase in flood levels within the community during the occurrence of the base flood discharge[.]" *See* 44 CFR § 60.3(d)(3). Despite NYSDOT's subsequent disclosure of the substantial construction activities within the Onondaga Creek floodplain, the FEIS inaccurately claimed that NYSDOT's selected alternative:

> would not cause a substantial encroachment within any floodplains. This alternative is defined as a rehabilitation project, ***because it does not include any reconstruction within the floodplains that raises existing embankment elevations***, does not widen an existing roadway along a stream in the flood hazard area, and ***does not include any new construction (or new bridges) within the flood hazard area***.

*See* FEIS § 6-4-7.4.1 at 6-434 (emphasis added). As Petitioners explain throughout this complaint, those statements are simply not correct.

28. Moreover, none of the potential impacts to the Property from this significant change to the elevation of the Creekwalk, from the constriction of water flows in the Onondaga Creek channel during flood events to the potential increase in the flow of stormwater from the new stormwater drain pipes and CSO pipes into Onondaga Creek were evaluated by NYSDOT during the environmental review of the Project, and NYSDOT has not publicly disclosed any report containing the analysis required by 44 CFR § 60.3(d)(3).

A. Environmental Review of the I-81 Viaduct Project

29. Beginning in approximately 2008, NYSDOT undertook a multi-year study of the I-81 highway corridor through downtown Syracuse, including the I-81 Viaduct and the 1-81 / I-690 interchange.

30. Following the completion of this study, in August 2013, FHWA issued a Notice of Intent to prepare an Environmental Impact Statement for the Project.

31. NYSDOT served as Lead Agency for the environmental review of the Project.

32. In November 2013, NYSDOT hosted an initial scoping meeting for the Project.

33. In June 2014, NYSDOT issued a draft scoping report for the Project.

34. In April 2015, FHWA and NYSDOT issued the Project Scoping Report for the Project.

35. In April 2019, NYSDOT released a preliminary Draft Design Report/Draft Environmental Impact Statement ("DDR/DEIS") for the Project.

36. On April 4, 2022, FHWA and NYSDOT released the Final Design Report / Final Environmental Impact Statement ("FDR/FEIS") for the Project.

37. In its discussion of Transportation Conditions, the FDR/FEIS noted that:

> The Onondaga Creekwalk is a shared-use (bicycle and pedestrian) path that, with the exception of the block between Spencer Street and West Kirkpatrick Street, follows the alignment of Onondaga Creek from the Inner Harbor to Wallace Street. Between Wallace Street and Fayette Street, the Creekwalk is diverted away from the creek onto the adjacent city sidewalk system for several blocks. ***The lowest sections of the Creekwalk between Genesee Street and Plum Street flood frequently when the Onondaga Creek rises during stormwater events***.

*See* FEIS at 5-57 (emphasis added).

38. To address this concern, the FEIS noted that:

> A new shared-use (bicycle and pedestrian) path would be provided on the west side of Onondaga Creek where none currently exists or would exist under the No Build Alternative. Raising a portion of the existing Onondaga Creekwalk to the ***10-year storm elevation*** will reduce the frequency of trail closures caused by flooding events in Onondaga Creek.

*See* FEIS at 5-182 (emphasis added). The FEIS does not identify the "10-year storm elevation" of Onondaga Creek.

39. Contained within the FEIS's discussion of "Infrastructure" was

> A reduction in flow to the combined storm sewer can be accomplished south of Butternut Street within the I-81 Viaduct Study Area by installing a new separated drainage system consisting of large diameter storm sewer trunk lines along former I-81/Almond Street and I-690. The conceptual layout of the proposed drainage system is shown on Figure 5-41 and is presented in more detail in the conceptual drainage plans included in Appendix A-1. ***The proposed system would include a new outfall to Onondaga Creek*** and would be subject to permit requirements by

> the NYSDEC and the U.S. Army Corps of Engineers. To obtain the required permits, ***a detailed hydraulic analysis would be conducted during final design to demonstrate the project development would have no adverse impacts to the downstream watercourses***.

*See* FEIS at 5-193 (emphasis added).

40. Despite this proposal, the FEIS expressly admitted that NYSDOT had not yet undertaken any hydraulic study of the possible hydraulic effects of these changes, in conjunction with changes to the bridge replacement work in this same area, noting that "a hydraulic study will not be required until detailed structural design advances." *See* FEIS at 5-201.

B. <u>Impacts to Mission Landing</u>

41. At no point during the approximately 14 years that the Project was under consideration and review did NYSDOT reveal that it intended to raise the Creekwalk by 10 feet directly adjacent to Mission Landing, that it intended to replace and extend the new CSO pipes into the channel of Onondaga Creek, or that it intended to redirect substantial volumes of stormwater directly into the Creek at this location.

42. NYSDOT, not FHWA, prepared the Section 4(f) analysis contained in Chapter 7 of the FDR/FEIS. *See* FEIS at 7-2.

43. NYSDOT's discussion of the impacts to Mission Landing in the FDR/FEIS were cursory and contained no discussion of any of these potential impacts upon the Property:

> **Remington Monarch Typewriter Company Building at 429 Franklin Street North (Map ID # 31) both individually listed and contributing to the Franklin Square Historic District**, where 0.002 of 3.04 acres (or 0.07 percent) would be permanently incorporated into the transportation facility to accommodate the relocation of Evans Street and the new shared use path connection between the Creekwalk and Franklin Street (see Figure 7-26).

*See* FEIS at 7-14. There is no discussion of any potential flooding impacts to Mission Landing in the FEIS.

44. Based upon this mischaracterization of the impacts to the Property, NYSDOT sought and obtained the concurrence of OPRHP's Division for Historic Preservation that the proposed taking would result in the "*de minimis*" use of the Property. *See* FEIS at 7-13. As a result of this erroneous determination, NYSDOT evaded its obligation to seek a "***feasible and prudent avoidance alternative***," to the taking of the Property and to undertake "***all possible planning …to minimize harm to the property*** resulting from" the taking. See 23 CFR § 774.3 (emphasis added).

45. In addition to the mischaracterization of the potential impacts to the Property, NYSDOT's description of the proposed taking was based upon a substantial undercalculation of the amount of Property to be taken for the Project.

46. While NYSDOT stated that only 92 square feet of land would be taken from the Property, it actually intends to permanently take 2,500 square feet and to temporarily take an additional 2,500 square feet for construction and deconstruction access.

47. NYSDOT also failed to disclose its plans to eliminate nearly all of the mature trees screening Mission Landing from the I-690 highway to OPRHP's Division for Historic Preservation.

48. In the fall of 2025, residents of Mission Landing learned that NYSDOT intended to raise the elevation of the Creekwalk by approximately 7 to 10 feet.

49. The residents of Mission Landing further learned that NYSDOT intended to construct structures within the Onondaga Creek flood channel, despite express representations to the contrary in the FEIS.

50. The information provided to the residents suggested that the elevation change was intended to accommodate the replacement of two existing combined sewer overflow ("CSO") pipes and the extension of the CSO pipes further into the channel of Onondaga Creek.

51. The replacement and extension of the CSO pipes through the gateway park entrance to Franklin Square was not part of the Project as proposed, nor was construction of a floatable containment facility in the middle of the gateway park entrance to Franklin Square, and Defendants did not review the potential environmental impacts from this proposed work as part of the Project. Given the changes already proposed for the Project at this location, the extension of the CSO pipes into the channel of the Creek has the potential for significant environmental impacts.

52. Residents of Mission Landing contacted numerous state and local government officials, including NYSDOT, to raise its concerns and to seek modifications to the proposed activities. NYSDOT rejected those concerns without meaningful consideration.

53. Upon information and belief, NYSDOT's proposed alterations to the Onondaga Creekwalk will result in violations of the criteria contained in 44 CFR § 60.3, and NYSDOT is prohibited from obtaining a variance from those criteria under 44 CFR § 60.6(a)(1), which provides that "Variances shall not be issued by a community within any designated regulatory floodway if any increase in flood levels during the base flood discharge would result[.]" At a minimum, NYSDOT's proposed alterations will fail to eliminate and/or mitigate existing impacts to historic properties within Franklin Square.

C. <u>The Proposed Taking of the Plaintiff's Property</u>

54. On or about December 4, 2025, Mission Landing's management company received a letter from NYSDOT advising that it was "preparing to acquire the additional right of way needed

for the 1-81 VIADUCT PROJECT [*sic*] project." The letter enclosed an unofficial copy of NYSDOT's acquisition map for the Project.

55. In response, by letter dated December 17, 2025, counsel for Mission Landing advised NYSDOT that "scope of the planned taking in no way resembles what was proposed by [NYSDOT] during its environmental review of the Project, and there are numerous other substantive and procedural defects with regard to the proposed taking and the Project as it relates to the Property[.]" Those defects included the mischaracterization of the taking as "*de minimis*" for historic preservation review, and the failure to evaluate potential flooding impacts, the misidentification of the property to be taken.

56. NYSDOT did not formally respond to Mission Landing's letter.

57. As noted above, on May 7, 2026, NYSDOT publicly confirmed its intention to raise the Creekwalk and to install a new stormwater drainage pipe directly upstream of Mission Landing.

58. One week later, by email dated May 14, 2026, NYSDOT advised Mission Landing that "we were just informed by our legal department that we are able to continue with the acquisition process at this time."

59. The State's statutory authority to acquire property it deems necessary to construct, reconstruct or improve a state highway or property connected with such highway projects is set forth in New York Highway Law § 30. Such property "may be acquired by the state as provided in the eminent domain procedure law". *See* Highway Law § 30(2).

60. Before condemning property, NYSDOT must prepare an accurate acquisition map of property deemed necessary for the highway project. *See* Highway Law §30(3). Once the acquisition map is approved by the Commissioner of Transportation, the State may proceed with the acquisition pursuant to the EDPL. *See* EDPL § 402(A).

61. Article 2 of the EDPL contains the procedural due process protections applicable to takings by the State of New York.

62. Those protections include: notice provisions (EDPL § 202); a public hearing (EDPL § 203); and written findings requirements (EDPL § 204).

63. EDPL § 205 provides that a proposed public project may be amended "only in the event that further study of field conditions warrant" such changes.

64. EDPL § 206 contains a provision that exempts a condemnor from complying with the procedural due process protections afforded property owners by Article 2, if "pursuant to other state, federal or local law or regulation, it considers and submits factors similar to those enumerated in subdivision (B) of section two hundred four, to a state, federal or local governmental agency, board or commission before proceeding with the acquisition and obtains a license, a permit, a certificate of public convenience or necessity or other similar approval from such agency, board or commission …". *See* EDPL § 206.

65. Based upon the materials provided to Mission Landing by NYSDOT, NYSDOT intends to claim that it is exempt from compliance with Article 2 of the EDPL pursuant to the terms of EDPL § 206(A), and that it may acquire title to the Property by the mere filing of an acquisition map in the office of the Clerk of Onondaga County Clerk.

66. The proposed changes to the Creekwalk are not justified under EDPL § 205.

67. The taking of additional property from Plaintiff is not justified under EDPL § 205, as Plaintiff has identified alternative(s) that meet NYSDOT requirements without requiring the taking of any private property. The alternative(s) identified by Plaintiff also reduce the impacts to Mission Landing and other historic properties within Franklin Square.

68. The taking of the Property does not meet the exemption criteria contained in EDPL § 206, as the nature and extent of the changes to the Creekwalk were neither disclosed nor evaluated in the environmental review of the Project, and NYSDOT did not take the required "hard look" at the potential flooding impacts from the changes to the Creekwalk.

69. Notwithstanding the foregoing, NYSDOT intends to proceed with the unlawful and procedurally defective taking of Plaintiff's property.

**FIRST CAUSE OF ACTION**
(42 U.S.C. § 1983)

70. Plaintiff repeats each of the foregoing allegations.

71. The Fourteenth Amendment to the United States Constitution prohibits the State of New York from depriving the Plaintiff and its members of property without Due Process of Law.

72. Defendants failed to disclose the true nature and extent of the planned changes to the Creekwalk, and the resulting impacts to the Property.

73. As a result of this failure, Plaintiff was denied notice and an opportunity to be heard on the Defendants' proposed taking of a portion of the Property, and to contest the flawed determination that the Project would have no more than a *de minimis* impact on the Property as a whole.

74. Plaintiff was further denied due process insofar as NYSDOT exempted its actions from the notice, hearing and determination and findings requirements of Article 2 of the EDPL, thereby attempting to insulate its exercise of the power of eminent domain from judicial review.

75. Plaintiff was further denied due process insofar as NYSDOT exempted its actions from the notice, hearing and determination and findings requirements of Article 2 of the EDPL, thereby attempting to insulate its violations of Federal and State law from judicial review.

76. Defendants were and are acting under color of New York State Law in acting to deprive Plaintiff and its members of property without Due Process of Law by causing the State of New York to attempt to take title to the Property without providing Plaintiff with notice and an opportunity to be heard on the actual nature and extent of proposed taking of property.

77. Plaintiff have been, and will further be, irreparably damaged if the Defendants are permitted to proceed with the unlawful taking of property without due process of law. Accordingly, Plaintiff requests that the Court grant it declaratory and injunctive relief restraining Defendants' violation of Plaintiff's constitutional rights.

78. Pursuant to 42 U.S.C. § 1988, Plaintiff also requests its reasonable attorney's fees incurred in enforcing 42 U.S.C. § 1983.

**SECOND CAUSE OF ACTION**
(Declaratory Judgment and Injunctive Relief)

79. Plaintiff repeats each of the foregoing allegations.

80. 28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

81. An actual controversy exists between Plaintiff and Defendants with regard to the constitutionality of the process employed by Defendants with regard to the taking of property from the Plaintiff.

82. The provisions of New York State Eminent Domain Procedure Law §402(A) violate rights to Due Process guaranteed by the United States Constitution prior to a taking of private property through the power of eminent domain because EDPL §402(A) allows the State to take property without an adversarial proceeding as to whether the taking is timely and correct.

83. New York State Eminent Domain Procedure Law §402(A) violates rights to Due Process guaranteed by the United States Constitution prior to a taking of private property through the power of eminent domain because EDPL §402(A) allows the State to take property without judicial review of the propriety of the taking.

84. Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendants' conduct is unlawful.

85. As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants' attempted taking of Plaintiff's property as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

## **THIRD CAUSE OF ACTION**

(Declaratory Judgment – National Flood Insurance Act)

86. Plaintiff repeats each of the foregoing allegations.

87. 28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

88. An actual controversy exists between Plaintiff and Defendants with regard to the planned changes to the elevation of the Creekwalk, and the related changes to the hydrology of Onondaga Creek directly adjacent to the Property.

89. Defendants' plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway violates the National Flood Insurance Act ("NFIA"), 42 U.S.C. § 4001, *et seq.*, and the regulations promulgated thereunder, including 44 CFR §§ 60.3 and 60.6.

90. Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendant has violated the NFIA.

91. As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with the NFIA and the regulations promulgated thereunder as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

**FOURTH CAUSE OF ACTION**
(Declaratory Judgment – National Historic Preservation Act)

92. Plaintiff repeats each of the foregoing allegations.

93. 28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

94. Defendants' determination that the Project will result in a *de minimis* use of the Property based upon erroneous and/or misleading information violates the National Historic Preservation Act ("NHPA"), 54 U.S.C. § 100101, *et seq.*, and the regulations promulgated thereunder at 36 CFR Part 800.

95. Defendants' failure to seek a "feasible and prudent avoidance alternative," to the taking of the Property and to undertake "all possible planning …to minimize harm to the property resulting from" the taking of Plaintiff's property violates 23 CFR § 774.3.

96. Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendants' Section 4(f) determination violated the NHPA.

97. As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with the NHPA and the regulations promulgated thereunder as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

**FIFTH CAUSE OF ACTION**
(Declaratory Judgment – Environmental Review)

98. Plaintiff repeats each of the foregoing allegations.

99. 28 U.S.C. § 2201(a) provides that, "[i]n a case of actual controversy within its jurisdiction …any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

100. Defendants' failure to identify and to take a "hard look" at potential impacts from raising the Creekwalk elevation, the construction of infrastructure within the regulatory floodway and related changes to the hydrology of Onondaga Creek violates the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-47, the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Environmental Conservation Law §§ 8-0101-8-0117, and regulations promulgated thereunder.

101. Defendants' failure to evaluate the environmental impacts of the replacement and extension of the CSO pipes, including the cumulative impacts of this activity with the work proposed for the Project, is a violation of its obligations under NEPA and SEQRA.

102. Declaratory relief will clarify the rights and obligations of the parties; therefore, pursuant to 28 U.S.C. § 2201, Plaintiff asks the Court to issue a judgment declaring that Defendants environmental review of the Project violated NEPA and SEQRA.

103. As Defendants' conduct is unlawful, Plaintiff asks the Court to enjoin Defendants from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until they comply with NEPA and SEQRA as "further relief" pursuant to 28 U.S.C. § 2202 and as a writ "necessary or appropriate in aid of" its jurisdiction pursuant to 28 U.S.C. § 1651.

**SIXTH CAUSE OF ACTION**
(Administrative Procedures Act)

104. Plaintiff repeats each of the foregoing allegations.

105. The purpose of NEPA is to require agencies to consider environmentally significant aspects of a proposed action and, in doing so, let the public know that the agency's decision making process includes consideration of environmental concerns.

106. When a governmental decision is found to be lacking under NEPA, it may be annulled as arbitrary and capricious if, *inter alia*, it fails to consider relevant environmental concerns.

107. Furthermore, where an agency's decision does not reasonably compile sufficient information to support the determination or where statements in the review are false or inaccurate, the requirements of NEPA are not met.

108. As detailed in the foregoing allegations of this Complaint, the FEIS and NEPA findings (which also formed the basis for NYSDOT's determination under SEQRA) are deficient under the law.

109. Defendants failed to consider relevant impacts to historical properties, including flooding, visual, noise and other environmental impacts, both individually and cumulatively with other potential impacts from the Project.

110. Defendants failed to consider alternatives that avoided or minimized adverse environmental impacts.

111. Defendants relied upon false or inaccurate statements in the FEIS concerning NYSDOT's intended construction activities within the Onondaga Creek flood channel.

112. Under NEPA, an agency may be directed to prepare a supplemental environmental impact statement if "[t]here are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 CFR § 1502.9(1)(ii).

113. As described above, there are deficiencies in the environmental review of the Project by the Defendants.

114. All decision making concerning the Project must be preceded by a valid and adequate environmental review.

115. Accordingly, the Defendants' findings under NEPA, including the FEIS and the agency Record of Decision, were illegal, arbitrary and capricious, and they should be vacated and annulled based upon the Defendants' inadequate and improper environmental review of the Project impacts discussed herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court issue an Order:

1. On Plaintiff's First Cause of Action, granting Plaintiff declaratory and injunctive relief pursuant to 42 U.S.C. § 1983, and restraining NYSDOT from taking action to irreversibly implement any changes to the Creekwalk or to Plaintiff's property, or to effect the taking of Plaintiff's property, in violation of Plaintiff's constitutional right to due process of law;

2. On Plaintiff's Second Cause of Action, declaring that NYSDOT's intended use of New York State Eminent Domain Procedure Law §402(A) violates Plaintiff's rights to Due Process guaranteed by the United States Constitution prior to a taking of private property through the power of eminent domain, and restraining NYSDOT from taking action to irreversibly implement any changes to the Creekwalk or to Plaintiff's property, or to effect the taking of Plaintiff's property,;

3. On Plaintiff's Third Cause of Action, declaring that NYSDOT's plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway violates the NFIA, and enjoining NYSDOT from proceeding with their plan to raise the elevation of the Creekwalk and to construct pedestrian, stormwater and roadway infrastructure within a regulatory floodway proceeding unless and until the Defendants comply with the NFIA;

4. On Plaintiff's Fourth Cause of Action, declaring that Defendants' Section 4(f) determination violates the NHPA, and restraining NYSDOT from taking action to irreversibly implement any changes to the Creekwalk or to Plaintiff's property, or to effect the taking of Plaintiff's property unless and until they comply with the NHPA

5. On Plaintiff's Fifth Cause of Action, declaring that Defendants' environmental review of the Project violated NEPA, SEQRA, and regulations promulgated thereunder, and

restraining NYSDOT from taking action to irreversibly implement any changes to the Creekwalk or to Plaintiff's property, or to effect the taking of Plaintiff's property, unless and until they comply with NEPA and SEQRA.

6. On Plaintiff's Sixth Cause of Action, vacating and annulling Defendants' determinations under NEPA and any approvals issued pursuant thereto, and restraining NYSDOT from taking action to irreversibly implement any changes to the Creekwalk or to Plaintiff's property, or to effect the taking of Plaintiff's property,;

7. Awarding Plaintiff its reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

8. Awarding Plaintiff its reasonable fees, costs , and expenses; and

9. Awarding such other and further relief as justice may require.

Dated: Albany, New York
October 15, 2026

COUCH WHITE, LLP

*s/John D. Hoggan, Jr.*

John D. Hoggan, Jr., Esq. (BRN 511254)
*Attorneys for Plaintiff*
540 Broadway
P.O. Box 22222
Albany, New York 12201-2222
(518) 426-4600